# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **REBECCA SUE HARVEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00074 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Chantal Jenkins, Assistant Regional Counsel; Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Rebecca Sue Harvey filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42

U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2010).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Harvey filed for benefits on May 29, 2008, alleging she became disabled on March 1, 2008.  Her claim was denied initially and upon reconsideration.  Harvey received a hearing before an administrative law judge ("ALJ"), during which Harvey, represented by counsel, and a vocational expert testified.  The ALJ denied Harvey's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration.  Harvey then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed and argued.  The case is ripe for decision.

II

Harvey was born on September 12, 1962, making her a younger person under the regulations.  20 C.F.R. § 404.1563(c) (2010).  Harvey graduated from high school and has an associate degree.  She has worked in the past as a medical office assistant.

Harvey received treatment in January 2007 at a hospital for congestive heart failure, obstructive sleep apnea, diabetes, hypothyroidism, and obesity.  She was referred to David Guldseth, M.D.

Harvey saw Michael W. Bible, M.D., in November 2007 for musculoskeletal complaints. He found trigger points in the trapezius, distal humerus, distal femur, and proximal tibia-fibula. He diagnosed fibromyalgia, chronic lower back pain with no signs of radiculopathy, and anserine bursitis.

At an April 2008 check-up, it was noted that Harvey's symptoms of hypothyroidism were improving with medication. Harvey reported walking daily.

In June 2008, Harvey sought treatment for knee pain, headaches, foot pain, and sinus pressure. Harvey had full range of motion with both knees. The top of her left foot was swollen. She was given a trial of Lyrica for treatment of her fibromyalgia and Celebrex for her knee pain. Images of Harvey's foot revealed degenerative changes but no acute abnormalities.

In July 2008, Harvey was admitted to the hospital complaining of chest pain, which was likely musculoskeletal in nature and was resolved. Hypothyrodism, fibromyalgia, and depression were also noted. Upon discharge, she had been prescribed Darvocet N, which is used to treat pain; Elavil, an antidepressant; Lasix, which reduces swelling and water retention; Prilosec, which is used to treat acid reflux; Prozac, an antidepressant; Synthroid, which is used to treat hypothyroidism; and Celebrex, which is used to treat the symptoms of osteoarthritis.

Harvey saw Timothy McGarry, M.D., in September 2008. Dr. McGarry diagnosed mild left knee pain with evidence of synovitis and some mild hamstring

strain and internal derangement of the right knee. An MRI was taken and was unremarkable. In November 2008, Dr. McGarry performed arthroscopic surgery on Harvey's right knee. In January 2009, Dr. McGarry indicated that the knee was well-healed and that Harvey's neurovascular status was normal.

In October 2008, Michael Cole, D.O., reviewed the evidence in the record at the request of the state agency. Dr. Cole determined that Harvey had the ability to perform a modified range of light work. Kim Zewiffer, Ph.D., also reviewed the evidence at the request of the state agency. She opined that Harvey had a nonsevere mental impairment. She noted that Harvey did not have any mental limitations on her ability to perform activities of daily living.

In December 2008, Dr. Guldseth, saw Harvey for complaints of aching, inability to dress herself, and inability to lift pots and pans. Dr. Guldseth prescribed Lortab. He also referred Harvey to Juan Rodriguez, M.D., for depression.

Bruce Fariss, M.D., an endocrinologist, evaluated Harvey in December 2008. He noted diabetes, hypothyroidism, asthma, and possible thyroiditis. He reported an unremarkable neurological examination.

Harvey saw Donna E. Boggs, L.C.S.W., in February 2009, after she made threats of harm against her daughter and husband to her primary care physician. Harvey explained that she was teasing when she made the statements. Boggs

noted that Harvey appeared depressed, anxious, tearful, and dramatic. She noted that it was clear that Harvey had emotional outbursts and drama in her family and social situations. Boggs diagnosed borderline personality disorder. Harvey followed up with Boggs in May 2009 and in June 2009. They discussed coping mechanisms.

In March 2009, Robert McGuffin, M.D., reviewed the evidence in the record at the request of the state agency. Dr. McGuffin opined that Harvey could perform a modified range of light work. Louis Perrott, Ph.D., also reviewed the evidence at that time. He opined that Harvey had a nonsevere mental impairment.

In July 2009, Boggs completed a medical assessment of Harvey's ability to perform work related activities with regard to Harvey's mental impairments. She opined that Harvey had no useful ability in all mental areas except for maintaining personal appearance. She referenced Harvey's pain, mood swings, and temper issues.

During a July 2009 meeting with Boggs, Harvey indicated that she was taking an anti-depressant and was tolerating it better. Boggs noted a brighter affect. Later that month, Dr. Rodriguez diagnosed manic bipolar disorder and

depression. He assigned a global assessment of functioning ("GAF") score of 50, indicating severe symptoms.[1]

In September 2009, Harvey reported to Boggs that she was trying to get out of the house more. In October 2009, Dr. Rodriguez assigned a GAF score of 55. He prescribed Abilify, an add-on depression treatment, and Cymbalta, which is used to treat depression and anxiety, and decreased Harvey's dosage of amitriptyline, an antidepressant marketed under the name Elavil.

In December 2009, Dr. Rodriguez noted mild distress but reported that Harvey had normal speech, coherent thought, fair insight and judgment, no suicidal or homicidal ideations, and no hallucinations. Dr. Rodriguez assigned a GAF score of 50. He continued Harvey on Cymbalta and amitriptyline and restarted her on Abilify.

In February 2010, Boggs noted that Harvey was alert and oriented. She assessed borderline personality disorder and bipolar disorder. She noted that Harvey was often unreliable in keeping appointments and that she believed Harvey

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

would be an unproductive employee. Boggs indicated that her opinion that Harvey would not be a good employment candidate was unchanged.

In March 2010, Dr. Rodriguez noted Harvey's depressed mood but reported normal findings in other areas. He assigned a GAF score of 50. Dr. Rodriguez continued Harvey on Abilify and increased Harvey's dosage of Cymbalta.

That same month, Boggs completed a second medical assessment of Harvey's ability to perform work activities. She concluded that Harvey had no useful abilities in almost all mental areas. She cited Harvey's emotional volatility and inability to cope with stressors.

At the administrative hearing held in April 2010, Harvey testified that she stopped working because she was crying all the time and could not deal with the public. Harvey testified that medication reduced her crying but maintained that she did not want to go out, even when she was on medication. She estimated that she slept about four and a half hours per night. A vocational expert also testified. She classified Harvey's past work as light, unskilled and light, semi-skilled.

After reviewing Harvey's record and hearing the testimony at the hearing, the ALJ determined that Harvey had several severe impairments: obesity, diabetes, thyroid problems status post thyroidectomy, kidney function problem, asthma, obstructive sleep apnea, bipolar disorder, depression, borderline personality disorder, knee problems, and fibromyalgia. She determined that none of these

-7-

Case 1:10-cv-00074-JPJ-PMS   Document 19   Filed 09/21/11   Page 7 of 14   Pageid#: 1006

conditions, either alone or in combination, met or medically equaled a listed impairment.  Taking into account Harvey's limitations, the ALJ determined that Harvey retained the residual functional capacity to perform light work that involved occasional crouching, crawling, and stooping but did not involve climbing ladders, working at heights, or operating dangerous machinery.  She was also limited only to work that occurred in an indoor, temperature-controlled environment free of excessive respiratory irritants. The ALJ also noted that Harvey's mental impairments further limited her to work that did not involve interaction with the public.  However, the ALJ found that Harvey could work with others or in small groups.  The vocational expert testified that someone with Harvey's residual functional capacity could perform unskilled clerical work or could work as a product inspector or laundry worker and that those positions existed in significant numbers in the national economy.  Relying on this testimony, the ALJ concluded that Harvey was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

     Harvey argues that the ALJ's decision is not supported by substantial evidence.  For the reasons below, I disagree.

## III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

Case 1:10-cv-00074-JPJ-PMS   Document 19   Filed 09/21/11   Page 9 of 14   Pageid#: 1008

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Harvey argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not properly consider Harvey's nonexertional impairments.

Harvey first argues that the ALJ failed to analyze the cumulative effect of Harvey's medical problems. This argument has no merit. The ALJ incorporated both exertional and nonexertional impairments in Harvey's residual functional capacity. A hypothetical question posed to the vocational expert outlined all of

these impairments, and the ALJ's conclusion was supported by substantial evidence.

Second, Harvey argues that the ALJ erred in accepting the findings of state agency physicians over the reports of Dr. Rodriguez and Boggs, a social worker. A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social workers are not medical sources under the regulations and thus cannot be considered treating sources. 20 C.F.R. §§ 404.1502, 416.902 (2010).

In the present case, the ALJ gave little weight to Boggs's assessments because they were inconsistent with Boggs's progress notes and the progress notes of Dr. Rodriguez. The medical records show that Harvey was not limited to the extent outlined by Boggs. The ALJ also considered the fact that Harvey was inconsistent about attending counseling sessions and was resistant to taking her prescribed medications. The ALJ properly rejected Boggs's conclusion that Harvey was not a good employment candidate as an issue properly reserved for

determination by the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e)(1) (2010). The ALJ did consider the opinion of Boggs in the analysis.

Contrary to Harvey's claim, there is no evidence that the ALJ rejected Dr. Rodriquez's opinion or failed to give it appropriate weight. Dr. Rodriguez did not complete a functional capacity assessment. In his medical notes, he opined that her mental symptoms were moderate to severe, as reflected in the GAF scores he assigned to Harvey. Consistent with that opinion, the ALJ found that Harvey suffered from the severe impairments of bipolar disorder, depression, and borderline personality disorder. Dr. Zewiffer and Dr. Perrot, state agency psychologists, each had opined that Harvey's mental impairments were nonsevere. The ALJ stated that she gave those opinions "some weight." There is no basis for Harvey's contention that Boggs and Dr. Rodriguez's opinions was afforded less weight than was appropriate and that the opinions of the state agency psychologists was relied upon too heavily.

Third, Harvey argues that the ALJ erred by substituting her own medical opinion for the opinion of health professionals. Particularly, Harvey asserts that the ALJ erred in finding only a mild restriction in Harvey's activities of daily living. The ALJ cited evidence, including forms completed by Harvey, that Harvey cares for herself, can pay attention all day, follows written and spoken instructions, gets along well with authority figures, can handle stress and changes

in her routine, prepares simple meals, does light laundry loads, drives, goes outside, shops for food every two weeks, goes out alone, talks on the telephone, handles finances, reads, watches television, lifts up to 15 pounds, walks half a mile at a time, goes to church regularly, uses a computer, and cares for two dogs. Furthermore, state agency psychologists opined that Harvey had only mild restrictions in her activities of daily living.

In light of that evidence, the ALJ was not bound to find a more severe limitation on the basis of Dr. Rodriguez's assignment of a GAF score in the 50 to 55 range, indicating moderate to severe symptoms. The GAF scale and the scale used to measure "Paragraph B" criteria are not the same, and a certain GAF score does not necessarily translate into a certain level of limitation for "Paragraph B." *See Hinton v. Astrue*, No. 09-CV-3142, 2010 WL 3270050, at *14 (C.D. Ill. Aug. 17, 2010). Moreover, a GAF score is not necessarily dispositive evidence since it is a mere snapshot of a person's functioning. *See Brown v. Astrue*, No. 7:08cv003, 2008 WL 5455719, at *5 n.6 (W.D. Va. Dec. 31, 2008). The ALJ's determination that Harvey had only a mild restriction in her activities of daily living was consistent with Harvey's own explanation of her abilities and was supported by substantial evidence.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: September 21, 2011

/s/ James P. Jones
United States District Judge